IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| VERLAN PEREZ, JR., § | |
|     Movant, § | |
| § | |
| v. § | No. 3:19-cv-1688-L (BT) |
| § | No. 3:17-cr-0498-L (BT) |
| § | |
| UNITED STATES OF AMERICA, § | |
|     Respondent. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Verlan Perez, Jr., a federal prisoner, filed a *pro se* motion to vacate, set-aside, or correct sentence under 28 U.S.C. § 2255. The District Court referred the resulting civil action to the United States magistrate judge pursuant to 28 U.S.C. § 636(b) and a standing order of reference. On October 22, 2019, the undersigned magistrate judge held an evidentiary hearing on Perez's motion. Now, for the following reasons, the undersigned recommends that the District Court DENY Perez's § 2255 motion.

I.

Perez pleaded guilty to possession of a Schedule II controlled substance with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii), and the District Court sentenced him to 156 months' imprisonment. Attorney Cody Lee Skipper represented Perez at his rearraignment and sentencing hearing. However, Perez filed this § 2255 motion *pro se*, arguing he received ineffective assistance of

counsel when Skipper (1) failed to file an appeal even though Perez instructed him to do so, and (2) failed to consult with him regarding an appeal.

II.

**1. Ineffective Assistance Standard**

To prevail on a claim of ineffective assistance of counsel, Perez must show that: (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense so gravely as to deprive him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

In *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the Supreme Court held that "the *Strickland* test applies to claims 'that counsel was constitutionally ineffective for failing to file a notice of appeal.'" *United States v. Bejarano*, 751 F.3d 280, 285 (5th Cir. 2014) (per curiam) (quoting *Flores-Ortega*, 528 U.S. at 477). The Court stated that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Flores-Ortega,* 528 U.S. at 477 (*citing Rodriquez v. United States,* 395 U.S. 327, 330 (1969)). In such a case, "prejudice will be presumed." *United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007).

Even if the defendant does not instruct counsel to file an appeal, counsel has a constitutional duty to consult with the defendant about an appeal. *Flores-Ortega,* 528 U.S. at 480. To "consult" requires that counsel advise the defendant about the advantages and disadvantages of filing an appeal and make a reasonable effort to discover the defendant's wishes. *Id.* If counsel consults with the defendant about filing an appeal, counsel is only deficient if he fails to follow the express instructions of the defendant. *Id.*; *United States v. Pham*, 722 F.3d 320, 323 (5th Cir. 2013) (same).

If counsel fails to consult with the defendant, the question becomes whether this failure to consult was unreasonable. Counsel must consult with the defendant regarding an appeal when: (1) there is reason to think that a rational defendant would want to appeal; or (2) this particular defendant reasonably demonstrated to counsel that he was interested in appealing. *Pham*, 722 F.3d at 324.

When counsel breaches his constitutionally-imposed duty to consult, prejudice is not presumed, and the "defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Flores-Ortega*, 528 U.S. at 484. However, "[t]he defendant need not show 'that his hypothetical appeal might have had merit.'" *Bejarano*, 751 F.3d 285 (quoting *Flores-Ortega*, 528 U.S. at 486). This standard applies even in cases "where a defendant has waived the right to appeal or collateral review." *Bejarano*, 751 F.3d 285 (quoting *Tapp,* 491 F.3d 263, 266).

3

## 2. Claims

Perez argues (1) he specifically told Skipper to file an appeal, but Skipper failed to do so, and (2) Skipper failed to consult with him about filing an appeal.

At the October 22, 2019 hearing, Perez testified that after the sentencing hearing, while he and Skipper were still in the courtroom, he told Skipper he wanted him to file an appeal, and Skipper indicated he understood Perez wanted to appeal. (ECF No. 20 at 10.) Perez also stated that prior to sentencing, he and Skipper discussed filing an appeal if his sentence was too high. (*Id.* at 8.) Perez testified that during the two weeks after his sentencing, he tried to call Skipper six or seven times. (*Id.* at 12.) He did not reach Skipper, but he stated he left messages with Skipper's staff. (*Id.*) Perez also said that in January 2019, he sent a letter to Skipper stating he wanted to appeal.[1] (*Id.* at 13, 23.) He said Skipper never responded. (*Id.* at 13.)

Perez also testified that in June 2019, he sent Skipper a second letter, but received no response. (*Id.* at 14.) Perez filed a copy of this letter with his § 2255 motion. (ECF No. 4.) In the letter, Perez asked about the status of his appeal, and also stated that his girlfriend and family, including his brother, had called Skipper's office and left messages with Skipper's secretary, but Skipper had not responded. During the October 22, 2019 hearing, however, Perez admitted he does not have a

---

[1] Perez states he does not have a copy of this letter, and Skipper testified he never received this letter. (ECF No. 20 at 23, 47.)

4

brother. (ECF No. 20 at 24.) He testified, "I guess I messed up on the writing when I wrote it." (*Id.* at 24.)

Perez also filed a letter with the district clerk's office, dated June 3, 2019, asking whether an appeal had been filed. (ECF Crim. Case No. 165.) The district clerk's office responded that no appeal was filed. (*Id.*) Perez testified he then filed this § 2255 motion. (ECF No. 20 at 14.)

Perez's mother, Mary Lou Perez, also testified at the October 22, 2019 hearing. She stated she talked to Skipper in the hallway after the sentencing hearing. (*Id.* at 29.) She testified Skipper told her that if Perez "wants to appeal, that for me to -- for us to get ahold of him later on." (*Id.*) She said she tried to call Skipper several times, but she did not reach anyone and did not leave any messages. (*Id.* at 30.)

Perez's former girlfriend, Rosa Olivares, also testified at the hearing. She stated she did not attend Perez's sentencing hearing, but after the sentencing hearing Perez told Olivares to contact Skipper and tell Skipper Perez wanted to file an appeal. (*Id.* at 33-34.) Olivares stated Perez told her she needed to contact Skipper because no appeal had been filed. (*Id.* at 34.) She said she called Skipper's office twice and left a message with Skipper's secretary to call her or call Perez, but she received no response. (*Id.* at 33.) Olivares did not claim that she left a message stating Perez wanted to file an appeal.

Skipper testified at the October 22, 2019 hearing as well. Skipper stated Perez never told him to file an appeal and never gave Skipper any indication that

5

Perez was interested in appealing. (*Id.* at 39, 42, 44, 46.) Skipper said that if Perez had requested that he file an appeal, he would have filed one, and that filing an appeal would have only taken a few minutes. (*Id.* at 46, 60.) Skipper also stated Perez's mother did not talk to him in the hallway after sentencing. (*Id.* at 45.) Skipper testified that after sentencing he did not receive any phone calls from Perez, his family, or his girlfriend. (*Id.* at 46.) Skipper also stated the only letter he received after the sentencing hearing was Perez's June 3, 2019 letter. (*Id.* at 47.) Skipper said he did not respond to this letter because it was a self-serving letter and "everything in the letter was not true." (*Id.*)

Skipper also testified he consulted with Perez about his appellate rights, which included a discussion of the plea waiver in the plea agreement. (*Id.* at 37-39.) He discussed Perez's plea agreement with him and Perez's limited right to appeal. (*Id.*) Skipper stated Perez did not express any concern about the appeal waiver. (*Id.* at 39.) Perez also acknowledged he discussed his appeal waiver with his counsel. (*Id.* at 17.) At his rearraignment, Perez stated he reviewed his plea agreement and appeal waiver with Skipper, that Skipper had explained his right to appeal, and that he understood those rights. (ECF Crim. Case No. 167 at 24-26.) Skipper testified that after the District Court informed Perez that he had 14 days to file an appeal, Skipper repeated to Perez that he had 14 days to file an appeal and Skipper also told him he had 12 months to file a § 2255 motion. (ECF No. 20 at 45.) Skipper said he told Perez "just let me know." (*Id.*) Skipper stated Perez responded, "I'm good." (*Id.*)

6

Perez's testimony is directly contradictory to Skipper's testimony. The Court finds Skipper's testimony that Perez did not request or direct him to file an appeal to be credible. The Court also finds Skipper's testimony that he consulted with Perez regarding his right to appeal to be credible. This finding is also supported by the record, including the transcript of the rearraignment proceedings. The Court finds Perez's testimony that he told Skipper he wanted to appeal is not credible. Further, although Perez's June 3, 2019, letter stated that Perez's brother had called Skipper's office and left a message, Perez admitted at the evidentiary hearing that he has no brother. Whether this was an intentional misrepresentation or careless mistake, the letter undermines Perez's credibility. The testimony from Perez's mother that she called Skipper's office to tell him Perez wanted to appeal, but did not leave any message, does not support Perez's claim that he told Skipper to file an appeal. The testimony from Perez's former girlfriend, Olivares, also does not support Perez's claim that he told Skipper after sentencing that he wanted to appeal. Although Olivares testified that she left two messages with Skipper's secretary asking Skipper to call her or call Perez, Olivares did not testify that she left any message stating that Perez wanted to appeal. Perez has failed to establish that his counsel failed to file an appeal after Perez directed him to do so, or that his counsel failed to consult with him regarding an appeal.

Moreover, even if Skipper had failed to consult with Perez regarding his appeal rights, there was no reason to think that a rational defendant would want

7

to appeal, and Perez did not reasonably demonstrate that he was interested in appealing.

The record shows that Perez's plea agreement included an appeal waiver. (ECF Crim. Case No. 121 at 6-7.) Pursuant to the waiver, Perez waived his appellate rights except for "the right (a) to bring a direct appeal of (i) a sentence exceeding the statutory maximum punishment, or (ii) an arithmetic error at sentencing, (b) to challenge the voluntariness of the defendant's plea of guilty or this waiver, and (c) to bring a claim of ineffective assistance of counsel." (*Id.* at 7-8.) Here, the sentence did not exceed the statutory maximum, and Perez has identified no arithmetic error. Perez has not alleged that his guilty plea or appeal waiver was involuntary. Instead, he challenges the drug quantity attributed to him and the length of his sentence; but he does not explain how his counsel was ineffective regarding the drug quantity or his sentence.

The PSR stated that Perez's sentencing range was 210 to 262 months. (ECF Crim. Case No. 138-1 at ¶ 78.) In the plea agreement, the Government agreed not to seek a sentence of more than 240 months. (ECF Crim. Case No. 121 at 3.) Skipper objected to the drug quantity in the PSR and filed a motion for a downward variance. (ECF Crim. Case Nos. 142, 148.) If the district court had sustained Skipper's objections, Perez's guideline range would have been 168 to 210 months. (ECF Crim. Case. No. 148 at 2.) Skipper's motion for downward variance stated that if the court overruled his objections, he requested a downward variance to 168

8

months. (*Id.*) Skipper testified at the evidentiary hearing that Perez was happy with his request for a sentence of 168 months. (ECF No. 20 at 41.)

Skipper stated that prior to the start of the sentencing hearing, the prosecutor conceded to Skipper's objections regarding the drug quantity. (*Id.* at 43.) This lowered Perez's guideline range to 135 to 168 months. (*Id.*) Skipper testified Perez was happy with the lowered guideline range and that Perez's reaction was "great." (*Id.*) Skipper stated:

> [Perez] expressed no – nothing to me, no nonverbal cues, no – nothing verbal that – nothing affirmative that would even slightly, remotely indicate to me that this guy wants to do an appeal, that he's unhappy, that he's anything other than pleased.

(*Id.* at 43-44.) The District Court sentenced Perez to 156 months, which was lower than the 168 months requested in the motion for downward variance.

As stated above, Perez has failed to establish that Skipper failed to consult with him regarding an appeal. Further, even if Perez could show that Skipper failed to consult with him, Perez has not established that any failure to consult was unreasonable. His ineffective assistance of counsel claims should be denied.

III.

For the foregoing reasons, the Court should DENY Perez's § 2255 motion to vacate, set-aside, or correct sentence.

Signed November 15, 2019.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

9

**INSTRUCTIONS FOR SERVICE AND
<u>NOTICE OF RIGHT TO OBJECT</u>**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996).